UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANK S. BAIL AND JOHN TYZBIR AS
TRUSTEES OF THE LOCAL 1102 HEALTH
AND BENEFIT FUND AND FRANK S. BAIL
AND FRAN BURKE AS TRUSTEES OF THE    **MEMORANDUM OF**
LOCAL 1102 RETIREMENT SAVINGS    **DECISION AND ORDER**
FUND,    09-CV-4191 (ADS) (ETB)

        Plaintiffs,

      -against-

DOVER HOSPITALITY SERVICES, INC.
a/k/a DOVER COLLEGE SERVICES,

        Defendants.
----------------------------------------------------------X

**APPEARANCES:**
**Koehler & Issacs, LLP**
*Attorneys for the plaintiffs*
61 Broadway, 25th Floor
New York, NY, 10008
   By: Julie Pearlman Schatz, Esq., Of Counsel

**Laws Offices of Richard M. Greenspan, P.C.**
*Attorneys for the plaintiffs*
220 Heatherdell Road
Ardsley, NY 10502
   By: Eric J. LaRuffa, Esq., Matthew P. Rocco, Esq., & Richard M. Greenspan, Esq., Of Counsel

**Kaufman, Dolowich, Voluck & Gonzo, LLP**
*Attorneys for the defendant*
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
   By: Jeffrey A. Meyer, Esq. & Keith J. Gustein, Esq., Of Counsel

**SPATT, District Judge**.

The Trustees of the Local 1102 Health and Benefit Fund and Local 1102 Retirement Savings Fund ("the Funds" or "the Plaintiffs") commenced this suit, pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29

1

U.S.C. §§ 1132, 1145, against Dover Hospital Services, Inc. a/k/a Dover College Services ("Dover" or "the Defendant) to compel an audit of Dover's books and records from January 1, 2007 through the present and to collect unpaid contributions.

Presently before the Court is the Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking: (1) to compel the Defendant to provide certain records to conduct an audit of its books and records for the February 1, 2007 to December 31, 2008 audit period and for reasonable attorneys' fees; (2) to collect unpaid contributions that accrued between September of 2010 and November of 2011, as well as interest, liquidated damages, reasonable attorneys' fees and costs; and (3) to compel the Defendant to submit to an audit of its books and records for 2009 and 2010. For the reasons set forth below, the Court grants in part and denies in part the Plaintiffs' motion.

## I. BACKGROUND

**A. The Parties and the Relevant Agreements**

The Funds are multiemployer plans as defined in the Employee Retirement Income Security Act, 29 U.S.C. § 1002(37)(A), and were established "to provide health, welfare and related benefits" to members of Local 1102 of the Retail Wholesale Department Store Union, United Food and Commercial Workers ("Union") who are eligible for the benefits pursuant to collective bargaining agreements with their employers. The Funds are governed by the Restated Agreement and Declaration of Trust of the Local 1102 Health and Benefit Fund and the Local 1102 Retirement Savings Fund ("the Trust Agreement"), and are managed by a Board of Trustees, composed of an equal number of employer and employee representatives ("the Trustees"). Plaintiffs Frank Bail, John Tyzbir and Fran Burke are members of each of the plaintiff Boards of Trustees. Under the Trust Agreement, each employer is required to make

2

prompt contributions or payments to the Funds consistent with the terms of their collective bargaining agreements with the Union. In order "to ensure diligent and systematic efforts to collect all contributions", the Trustees enacted the Restated and Amended Collections procedures ("the Collections Policies"). (Pls.' 56.1 Stmt., ¶ 11).

Defendant Dover Hospitality Services, Inc. is a New York corporation that provides food and vending services at the Ammerman and Grant campuses of Suffolk County Community College. Pursuant to a collective bargaining agreement between Dover and the Union ("the CBA"), Dover is obligated to contribute to the Funds on behalf of its eligible employees, the amount and terms of which are set forth in the CBA ("the contribution obligation"). (See CBA at Art. 18, pg. 9; id. at Art. 19, pg. 10.) In addition, pursuant to Article 18 of the CBA, Dover is bound by all the terms and conditions of the Trust Agreement and all the rules, regulations, and procedures promulgated by the Trustees of the Funds pursuant thereto, including the Collections Policies.

**B.  The Funds Right to Conduct an Audit of Dover's Books and Records**

The CBA, Trust Agreement and Collections Policies authorize the Funds to periodically examine and audit Dover's books and records. (See CBA, at Art. 18(b), pg. 9 ("Fund shall have the right to examine the Employer's payroll and other records for the purpose of determining whether the Employer has complied with [the contribution obligation]."); Trust Agreement at Art. 4, pg. 17 ("The Trustees . . . shall have the right to enter upon the premises of the Employers and to examine, audit and copy such of the books, records, papers and reports of said Employers relating to the employment and payroll records of each Employer as may be necessary to permit the Trustees to determine whether said Employers are making full payment to the Trustees of the amounts required by [the CBA]"); Collection Policies at ¶ 2, pg. 5 ("Each Employer is required

3

to make available to the Fund's accountants or other representatives (referred to hereinafter as the "Auditors") all of its accounts, books and records . . . that are deemed necessary by the Auditors, at all reasonable times at the Employer's place of business").)

It is undisputed that "[t]he purpose of the audits is to determine whether Employers are fully, accurate and timely complying with their obligation to make contributions to the Funds and to uncover any unpaid contributions which the Fund may thereafter collect." (Pls.' 56.1 Stmt., ¶ 13.) To perform the audits, the Funds employ Kimberly Frost, a "Payroll Compliance Auditor" ("Frost" or "the Auditor"). Although the frequency of the audits is within the discretion of the Trustees, "as a general practice, the Funds try to audit each employer at least once every three (3) years". (Frost Decl. ¶ 16.)

The procedures for conducting an audit and the consequences for failing to comply are set forth in the Collection Policies. (Collection Policies at ¶ 3, pg. 5.) Relevant to this case are the following provisions:

> **a. Employer Notices:**
> The Auditors or the Fund shall send advance notice to the Employer advising it that an audit is to be conducted, the date on which the audit is to be conducted, the period to be covered by the audit, and listing the books and records of the Employer required to be made available. . . .
> . . . .
> **c. Uncooperative Employers:**
> In the event notice of an audit has been sent to the Employer, and the Employer (i) refuses to permit an audit of its books and records (as defined herein), (ii) refuses to cooperate with the specific requests of the Auditors, or (iii) has failed to maintain (or no longer has) possession of the books and records necessary for an audit, the Fund Administrator shall refer the matter to Counsel for legal action. . . .
> . . . .
> **f. Assumption of Amounts Owed by Uncooperative Employers:**
> In the event that, after a reasonable request by the Fund and proper and timely notice has been given, an Employer fails to

4

> produce all books and records necessary to enable the Fund's Auditors to conduct the audit, or is otherwise uncooperative, the Fund Administrator, in his/her sole and absolute discretion may make, in his discretion, a reasonable estimate of amounts due based upon such empirical data as may be available. Such determination shall be binding on the Employer pending adjustment, if any, during collection proceedings.

(Collection Policies at ¶ 3, pg. 5–7.)

Although Dover does not dispute that these are the stated procedures and consequences, Dover contends that the stated policy differs from past practices.

### C. The 2007–2008 Dover Audit and the Instant Action

On May 5, 2009, Frost, on behalf of the Funds sent a letter to Dover, notifying It that the Funds had selected Dover for an audit for the time period of January 1, 2006 through December 31, 2008. In the letter, the Funds requested that Dover make the following documents available for "all employees" for the relevant time period:

- Payroll registers;
- Employees' earnings records;
- Hire and termination dates for all Union employees;
- Federal W-3 forms;
- Federal W-2 forms;
- Federal 1096 forms;
- Federal 1099 forms;
- Federal 941 forms;
- State payroll tax reports (NYS-45 Forms);
- Job descriptions;
- General ledger;
- Cash disbursement books; and
- Other information that may be required and will be requested as needed.

(Frost Decl., Ex. D.)

According to the Funds, on June 15, 2009, Dover "mailed to the Funds weekly payroll registers with all of the information blacked out except for the information pertaining to individuals the Funds believed to be Union employees" and "mailed incomplete NY-45 (omitting

various quarters) forms and W-2 forms for Union members only". (Pls.' 56.1 Stmt., ¶ 28.) Subsequently, on August 14, 2009, the Funds assert that their legal counsel "sent Dover a letter informing Dover that the information mailed was grossly insufficient, and demanding that the entirety of the requested information be provided". (Pls.' 56.1 Stmt., ¶ 29.) The Funds assert that Dover responded by "sen[ding] a letter to the Funds stating that, in their opinion, they had already complied with the production requirements by virtue of its June 15, 2009 submissions" and providing "incomplete versions of the Form 940's that were requested in the Funds' August 14, 2009 correspondence". (Pls.' 56.1 Stmt., ¶ 30.) Dover does not dispute that it sent a letter in response to the August 14, 2009 demand letter, but contends that it provided documents in addition to the Federal 940 forms, including Federal 941 Forms. Regardless, the Funds contend that the documents provided were insufficient to conduct the audit, and therefore to determine whether any unpaid contributions were due.

Thus, on September 30, 2009, the Funds commenced the instant action seeking an injunction requiring Dover to submit to a full and complete audit of its books and records for the time period of January 1, 2007 to the present; to collect any unpaid contributions resulting from the audit; and to collect any unpaid contributions that may become due during the course of the litigation. The parties agree that, due to a prior settlement between the parties, the audit period should begin on February 1, 2007. However, the parties dispute the relevant end-date for the audit period. According to Dover, the relevant audit period ends on December 31, 2008. By contrast, the Funds contend that, despite the fact that all of the discovery in this case was limited to the request for documents to satisfy the February 1, 2007 to December 31, 2008 audit period, this action encompasses a request for audit documents through 2009 and 2010.

During the course of the litigation, Dover continued to provide additional documents to the Funds in order to permit the Funds to conduct an audit. The Funds continued to believe these documents were insufficient, and in an August 15, 2011 email to Dover's counsel, identified the following outstanding documents required to conduct the audit: (1) federal W-2 and W-3 forms for all years for all employees; (2) NYS-45 forms and Federal 941 forms for all years for all employees; (3) "Paychex" year-end master control for all years for all employees and payroll adjustment journal detail for each pay period for each year ("the Paychex reports"). (Rocco Decl., Ex. 7.)

After Dover failed to respond to the August 15, 2011 email, the Funds requested a pre-motion conference with the Court to set a schedule for summary judgment. At this conference, Dover's counsel requested an additional opportunity to provide the documents requested in the August 15, 2011 email, but represented to the Court that some of the requested documents were not in Dover's possession. The Court provided Dover until September 28, 2011 to produce the documents requested in the August 15, 2011 email, to the extent they were available. Subsequently, Dover transmitted the additional documents with the exception of the first quarter and fourth quarter 2008 NYS-45 forms, and the Paychex reports, which Dover claimed were not in its possession.

**D.  The Instant Motion**

Despite the additional production of documents, the Auditor determined that, based upon the totality of the documents Dover had submitted both before and during the course of the litigation, without the W-3's, 2008 fourth quarter NYS-45 form, and Paychex reports, she was unable "to issue an audit report stating whether Dover has made correct contributions to the Fund during the audit period". (Frost Decl., ¶ 35.) Accordingly, on December 16, 2011, the Funds

7

filed the instant motion for summary judgment to compel the production of the missing documents.

Although the Funds have subsequently admitted that they are in possession of the relevant W-3's, the Auditor still maintains that, without the 2008 fourth quarter NYS-45 form and the Paychex reports ("the outstanding documents"), she cannot conduct the audit. With respect to the NYS-45 form, the Funds asserts that this document is necessary in order to enable the Auditor to tabulate the total quarterly wages for the company "because it shows payments made to employees both within that quarter itself and summarizes the total annual wages for the employer" . (Pls.' 56.1 Stmt., ¶ 37.) According to the Auditor, without the fourth quarter 2008 NYS-45 form, she cannot "ensur[e] that reported payrolls among various tax documents are consistent for a given year". (Frost Decl., ¶ 39.) In addition, the Auditor notes that the fourth quarter 2008 NYS-45 form "is particularly important because it prevents an employer from hiding someone on the payroll by only paying them in the fourth quarter". (Frost Decl., ¶¶ 39, 40.)

The other outstanding documents, the 2007 and 2008 Paychex reports, are year-end reports that are produced by Paychex, a third-party payroll administrator. According to the Funds, "[t]he Paychex year-end report acts, again, as a check on the wages which should have been reported in the W2's, W3's and NYS-45 forms. Making sure all of the reported wages match-up is the essence of conducting a payroll audit". (Pls.' 56.1 Stmt., ¶ 41; Frost Decl. ¶ 42.)

For its part, Dover does not challenge the Funds' right to conduct an audit or to request documents necessary to conduct the audit. Rather, Dover disputes that the outstanding documents are necessary to perform the audit for the February 1, 2007 to December 31, 2008 time period, and argues that the Court should deny the Funds' request because it does not have

8

possession of the outstanding documents. Dover does not provide any explanation as to why it does not have possession of the fourth quarter 2008 NYS-45 form, nor does it explain why it cannot obtain a copy of the form. With respect to the Paychex documents, Dover asserts that it has "never been provided [with Paychex reports] by Paychex" and that Paychex reports are not documents that are "customarily produced to [Dover] by Paychex". (Def.'s 56.1 Stmt., ¶ 118.) Also, Dover claims that, in conjunction with prior audits, it has never produced Paychex reports. (Id.)

In addition to seeking to compel Dover to produce the outstanding documents, the Funds seek summary judgment on two newly asserted claims. First, the Funds contend that during the course of the litigation "it has become necessary for the Funds to review, in addition to the documents for the time periods originally requested, financial documents for the years of 2009 and 2010 as well". (Pl.'s 56.1 ¶ 42.) Thus, the Funds move for summary judgment seeking injunctive relief in the form of an order directing Dover to provide these additional documents.

Further, the Funds contend that, during the course of this litigation, "Dover became indebted to the Funds for unpaid contributions and shortages to the Health Benefit Fund ("HBF") in the amount of $8,280 covering the period from September, 2010 through November, 2011". (Pls.' 56.1 ¶ 45.) Accordingly, the Funds move for summary judgment granting them the unpaid contributions, as well as interest, liquidated damages, reasonable attorneys' fees and costs. On the other hand, in addition to disputing that it owes any unpaid contributions, Dover opposes the Funds motion for summary judgment on these additional bases on the ground that they constitute newly asserted claims.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving

party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting Schwabenbauer v. Bd. of Ed., 667 F.2d 305, 313–14 (2d Cir. 1981) (internal citations omitted)).

**B.  As to the Plaintiffs' Motion to Compel an Audit of the Defendant for February 1, 2007 through December 31, 2008**

The Plaintiffs seek an injunction requiring Dover to meet its statutory and contractual obligations to permit a payroll audit of its books and records. Specifically, the Plaintiffs seek "an injunction prohibiting Dover from failing to produce the few sought-after records in question". (Pls.' Reply at 3.)

Pursuant to ERISA § 1132(g)(2), a court may grant "such . . . legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "Such relief may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." Mason Tenders Dist. Council Welfare Fund v. A.G.I., Inc., No. 03-CV-1238, 2005 WL 1565831, at *4 (S.D.N.Y. June 8, 2005); Annuity, Pension, Welfare and Training Funds of Int'l Union of Operating Engineers v. Drama Constr. Corp., No. 06-CV-6148, 2007 WL 182830 (E.D.N.Y. June 22, 2007). The right of employee-benefit plan trustees to conduct such audits of contributing employers is consistent with the provisions of ERISA. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 573, 105 S.

Ct. 2833, 86 L. Ed. 2d 447 (1985). "[T]he auditing powers of a benefit plan are limited to prudent actions furthering the legitimate purposes of the plan". Id. at 582.

Furthermore, ERISA provides that "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). "This requirement forces employers 'to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties.'" Hanley v. Ocean Beach Club, Inc., No. 96-CV-4478, 1998 WL 65990, at *5 (S.D.N.Y. Feb. 18, 1998) (quoting Central States, 472 U.S. at 573, 105 S. Ct. 2833)).

It is undisputed that the Plaintiffs are entitled to conduct an audit of Dover, and that Dover has produced all of the documents necessary to conducting an audit for the February 1, 2007 through December 31, 2008 audit period with the exception of: (1) the fourth quarter 2008 NYS-45 tax form and (2) the 2007 and 2008 Paychex reports. Although the Plaintiffs question the veracity of the claim, the Defendant maintains that it cannot produce the outstanding documents because the documents are not in its possession. (Def.'s 56.1 Stmt., ¶¶ 118, 119, 121; Meyer Decl., ¶¶ 42, 43, 45; Yamali Decl., ¶¶ 17, 19.) Furthermore, the Defendant argues that the Court should deny the Plaintiffs' motion because "[n]o legitimate purpose of the Funds is served through continued insistence upon documents already in their possession or upon documents which Dover does not have in its possession". (Def.'s Br. at 10.)

As an initial matter, the Court agrees that it cannot grant the Plaintiffs' narrow request to compel the production of documents not in the Defendant's possession, although not for the reason asserted by the Defendant. Rather, the Court finds that it would be futile for the Court to grant the Plaintiffs' request because, as previously stated, the Trust Agreement and ERISA

12

provide remedies for this precise situation, namely when the failure to maintain relevant records impedes the Funds' ability to audit an employer.

However, the Court can grant summary judgment to the Plaintiffs on the broader claim in the complaint to compel an audit for the February 1, 2007 through December 31, 2008 audit period. The fact that the Defendants do not have possession of the requested records does not moot a claim to compel an audit. See Jaspan v. Glover Bottled Gas Corp., 80 F.3d 38, 39 (2d Cir. 1996) (affirming district court's grant of summary judgment to the plaintiff-funds on their motion to compel an audit despite the defendant's assertion that the motion was mooted because the "relevant records no longer existed"); see also La Barbera v. A. Morrison Trucking, Inc., No. 08-CV-3095, 2011 WL 703859, at *4 (E.D.N.Y. Feb. 18, 2011) (granting the plaintiff-funds' motion for summary judgment on claim for delinquent contributions assessed after the defendant failed to provide the requested books and records for an audit, and holding that, "no amount of dissembling or excuse will release it from its obligation" to provide the records under ERISA and the underlying agreements); Moran v. Sasso, 05-CV-4716, 2007 WL 2710967, at *2, *4 (E.D.N.Y. Sept. 13, 2007) (granting the plaintiff's summary judgment motion for an order compelling a payroll audit, despite the defendants' claim that the plaintiff requested records "many of which 'have never been created and therefore are not in existence'", on the ground that, "[a]lthough there [was] a dispute as to whether the [defendants] ha[d] failed and refused to submit to an audit, there [was] no dispute as to the Plaintiffs' right to an audit").

Dover was required by the Trust Agreement to submit to an audit, and agreed that, in the event documents that were deemed necessary to the audit were either lost or not maintained, to pay "a reasonable estimate of amounts due based upon such empirical data as may be available". (Collection Policies at ¶ 3, pg. 6–7.) Although there is a dispute as to whether Dover has failed

13

and refused to submit to an audit by not providing the fourth quarter NYS-45 form and Paychex reports, there is no dispute as to the Plaintiffs' right to an audit. Thus, the Court grants the Plaintiffs' summary judgment motion to the extent it seeks an audit of the Defendant's books and records for the time period of February 1, 2007 to December 31, 2008.

As to the appropriate remedy, the proper procedure is for the Plaintiffs to conduct the audit with the information available, and then, if necessary, seek the penalties provided by the underlying agreement. At this stage, the Plaintiffs have not attempted to conduct an audit based on the records the Defendant has provided, and therefore have not determined if the Defendant owes any unpaid contributions. Thus, any consideration of whether the Plaintiffs are entitled to damages, and possibly heightened damages for lack of necessary documentation, would be premature.

Having found that the Plaintiffs are entitled to compel an audit, the Court will afford the Plaintiffs 60 days from the date of this order to conduct the audit. Within 30 days of the date the audit is completed, if necessary, the Plaintiffs may submit a letter to the Court to obtain a trial date on the issue of damages, including renewing their motion for reasonable attorney's fees and costs. La Barbera, 2011 WL 703859, at *6 (citing the Second Circuit's summary order in Reilly v. Reem Contracting Corp., 2010 WL 2202947, 380 Fed App'x 16 (2d Cir. June 2, 2010) for the proposition that, where the defendant disputes the amount of unpaid contributions calculated "the more prudent approach is to hold a short bench trial at which [the defendant] can contest the amount of damages"); New York District Council of Carpenters Pension Fund v. KW Constr., Inc., 2010 WL 3958799, at *5 (S.D.N.Y. Sept. 2, 2010) (citing Reilly and noting "inquiries into the reasonableness of the Funds' audits or the adequacy of the defendants' employee records are properly left for trial and the proper question in deciding the Fund's motion for summary

judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund") (internal citation omitted).

**C.  As to the Plaintiffs' Motion for Summary Judgment on Claims for Unpaid Contributions and Audit Documents Arising After the Filing of the Complaint**

Although the complaint anticipates the possibility that a future audit may need to be conducted and that unpaid contributions may accrue, the complaint is devoid of any specific allegations that the Defendant has failed to comply with a request to audit its books and records for 2009 and 2010, or that the Defendant owes unpaid contributions from September of 2010 to November of 2011.  Thus, the Court denies the Plaintiffs' motion for summary judgment on their claims seeking: (1) to collect unpaid contributions allegedly incurred between September of 2010 and November of 2011; and (2) to compel an audit of the Defendant's 2009 and 2010 books and records.  This denial is without prejudice to the Plaintiffs' right to either move to amend the complaint, or to commence a separate action seeking this relief.  See, Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp., No. 06-CV-2953, 2007 WL 2712314, at *6 (E.D.N.Y. Sept. 13, 2007) ("Accordingly, although plaintiffs suggest that defendants may be responsible for additional contributions from January 1, 2005 to the present, plaintiffs do not specifically allege that defendant has failed to comply with its obligations under the CBA from January 1, 2005 to the present. If plaintiffs wish to pursue additional delinquencies, they may initiate a separate action for relief.").

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiffs' motion for summary judgment to compel an audit of the Defendant's books and records for the audit period of February 1, 2007 through December 31, 2008 is granted, and it is further

**ORDERED**, that the Plaintiffs' motion for summary judgment to compel an audit of the Defendant's books and records for 2009 and 2010 is denied without prejudice, and it is further

**ORDERED**, that the Plaintiffs' motion for summary judgment to collect unpaid contributions allegedly incurred between September of 2010 and November of 2011 is denied without prejudice, and it is further

**ORDERED**, that the Plaintiffs are afforded 60 days from the date of this order to conduct an audit of the Defendant's books and records for the February 1, 2007 to December 31, 2008 audit period and, if necessary, within 30 days of the date the audit is completed, the Plaintiffs may submit a letter to the Court to obtain a trial date on the issue of damages, including renewing their motion for reasonable attorney's fees and costs.

**SO ORDERED.**
Dated: Central Islip, New York
July 23, 2012

 ___*/s/ Arthur D. Spatt*___
 ARTHUR D. SPATT
 United States District Judge